**Phil HART and D.J. Enterprises, Inc. d/b/a Associated Insurance Agency, Appellants,**

v.

**BERKO, INC. d/b/a El Encanto, Appellee.**

No. 08–93–00083–CV.

Court of Appeals of Texas, El Paso.

July 14, 1994.

Rehearing Denied Aug. 24, 1994.

David R. Pierce, Scott, Hulse, Marshall, Feuille, Finger & Thurmond, El Paso, for appellants.

E. Link Beck, Beck & James, El Paso, for appellee.

Before BARAJAS, C.J., and KOEHLER and LARSEN, JJ.

## OPINION

KOEHLER, Justice.

This is a suit brought under provisions of the Texas Deceptive Trade Practices Act and the Texas Insurance Code by the policy owner against its insurance agent for damages arising out of a dispute over alleged representations concerning the amount of fire insurance coverage in effect at the time of a substantial fire loss. The jury found in answer to a broad-form question submitted to it that the agent had engaged in one or more of four acts of conduct without being required to specify which act or acts the agent had engaged. We affirm.

## RELEVANT FACTS

In January of 1990, Berko, Inc. d/b/a El Encanto (Berko), through its Vice President, Sara Blaugrund (Blaugrund), requested that Phil Hart (Hart), employed by D.J. Enterprises, Inc. d/b/a Associated Insurance Agency (D.J.)[1], increase the amount of insurance coverage on its building from $242,000 to $650,000. According to Blaugrund, Hart represented to her that he had obtained fire coverage of $600,000 on the building. On February 27, 1990, the building was completely destroyed by a fire. On the day after the fire, Hart notified Blaugrund that the building had only $242,000 coverage.

Berko subsequently filed suit against Appellants alleging violations of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA) and the Texas Insurance Code. Appellants counterclaimed against Berko for unpaid earned premiums on several insurance policies. Trial was to a jury, which found that certain violations of the DTPA and Insurance Code by Hart were a producing cause of damage, that the acts were committed knowingly, and that the

damage to Berko was $358,000. The jury also found for Appellants on their counterclaim. After trebling the damages and adding prejudgment interest and attorney's fees and subtracting the amount of the counterclaim, the court rendered judgment on the verdict in favor of Berko and against Appellants for approximately $1,218,805.

In this appeal, Appellants contend in seven points of error that there was either no evidence or insufficient evidence that the alleged misrepresentation was a producing cause of Berko's injury (points one and two); that neither Berko's pleadings nor the jury findings support an automatic trebling of damages, an unlisted violation of DTPA Section 17.46(a) does not trigger the mandatory treble damage provisions of TEX.INS.CODE ANN. art. 21.21, § 16, and the court erred in rendering judgment for treble damages because the jury question on Hart's conduct failed to segregate the one act alleged to be an Insurance Code violation from the three acts not so alleged (points three, four, and five); that the court erred in entering judgment based on the answer to an incorrectly worded liability question where the jury could, and may, have found that Hart committed "a false, misleading or deceptive act or practice" without separate findings that he committed a specific act and that such act was false, misleading or deceptive (point six); and that the trial court erred in imposing liability on Hart based on a finding that his conduct may have been merely misleading (point seven).

## SUFFICIENCY OF EVIDENCE

■ Appellants' first two points on appeal attack the factual and legal sufficiency of the evidence to support the "producing cause" finding. When confronted with both legal and factual sufficiency points, we are first to examine the legal sufficiency question. *Texmarc Conveyor Co. v. Arts*, 857 S.W.2d 743, 745 (Tex.App.—Houston [14th Dist.] 1993, writ denied). In considering a "no evidence" legal sufficiency point, we consider only the evidence and reasonable infer-

---

1. Phil Hart and D.J. Enterprises, Inc. will be referred to collectively as "Appellants" in this opinion.

ences which tend to support the jury's findings and disregard all evidence and inferences to the contrary. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). If there is more than a scintilla of evidence to support the questioned finding, the "no evidence" point fails. *Stafford,* 726 S.W.2d at 16; *Worsham Steel Co. v. Arias,* 831 S.W.2d 81 (Tex.App.—El Paso 1992, no writ); *Fuentes v. McFadden,* 825 S.W.2d 772 (Tex.App.—El Paso 1992, no writ).

In the case of a factual sufficiency challenge, the court must first examine all of the evidence, *Lofton v. Texas Brine Corporation,* 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

Stated in another way, Appellants assert that there is either no evidence or not enough evidence to prove that Hart's alleged misrepresentation was a producing cause of Berko's damages. This Court has recognized that in order to recover damages for deceptive acts under Article 21.21 of the Insurance Code, a plaintiff is required to prove that the conduct in question was a producing cause of any damages sustained. *First Am. Title Company of El Paso v. Prata,* 783 S.W.2d 697, 701 (Tex.App.—El Paso 1989, writ denied). *See also* Tex.Ins. Code Ann. art. 21.21 (Vernon 1981 & Supp. 1994); Tex.Bus. & Comm.Code Ann. § 17.50(a) (Vernon 1987 & Supp.1994); *Weitzel v. Barnes,* 691 S.W.2d 598, 600 (Tex.1985). A producing cause is "an efficient, exciting, or contributing cause, ...." *Rourke v. Garza,* 530 S.W.2d 794, 801 (Tex.1975); *Prata,* 783 S.W.2d at 701. The evidence must establish that the damages alleged were factually caused by the defendant's conduct. *Prata,* 783 S.W.2d at 701; *Rotello v. Ring Around*

*Products, Inc.,* 614 S.W.2d 455 (Tex.Civ. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

Appellants assert that because Blaugrund testified that even "if she had known that Hart had not yet obtained the additional fire coverage on February 21, she would not have looked for other insurance not [sic] would she have taken any other precautions against fire." Therefore, the argument goes, Berko cannot show that it relied on Hart's alleged statement and cannot predicate producing cause solely on Blaugrund's "mistaken belief" that Berko had a total fire coverage of $600,-000 on its building. Their reliance on *Royal Globe Ins. Co. v. Bar Consultants, Inc.,* 577 S.W.2d 688, 694–95 (Tex.1979), is misplaced. Although *Royal Globe* reads in terms of the insured being adversely affected and injured when it relied on the agent's misrepresentation of coverage, it is clear from that opinion and subsequent cases that the "reliance" only entailed believing it was covered when it was not so covered, not that it would have taken other action if it had known that it was not covered. 577 S.W.2d at 694.

Both parties cite *State Farm Fire & Casualty Co. v. Gros,* 818 S.W.2d 908 (Tex. App.—Austin 1991, no writ), to support their respective positions on presence or absence of producing cause. In *Gros,* the question was whether the alleged misrepresentation by the insurance agent that damage to the insureds' home resulting from landslide would be covered, was a producing cause of the insureds' loss where the evidence showed that the insureds could not have obtained the desired coverage from any other source. Although the *Gros* Court muddied the water by speculating on what the insureds might have done if they had known that damage from landslide was not covered, the primary holding was to the effect that the insureds were not required to prove other available insurance coverage in order to establish producing cause, they need only show that as a result of the misrepresentation, they believed that they were covered by insurance when they were not so covered, citing *Royal Globe,* 577 S.W.2d at 694. Although neither reliance nor foreseeability are necessary elements of recovery, the evidence must establish that

the alleged false, misleading, or deceptive act was a producing cause of the plaintiff's actual damages, otherwise there is no cause of action. *Prata,* 783 S.W.2d at 701. See also *South Texas Nat'l Bank of Laredo v. United State Fire Ins. Co.,* 640 F.Supp. 278, 280 (S.D.Tex.1985) (Absence of any allegations that plaintiff had relied upon or was injured by the alleged misrepresentation required dismissal).

■ It is clear from cases following *Royal Globe* that reliance is not a necessary element that a consumer must prove in order to recover under Section 17.50(a)(4) of the DTPA or Section 16, Article 21.21 of the Texas Insurance Code. *Weitzel,* 691 S.W.2d at 600; *Celtic Life Ins. Co. v. Coats,* 831 S.W.2d 592, 596 (Tex.App.—Austin 1992) *aff'd as modified,* 1994 WL 278107 (Tex., June 22, 1994); *Crawford & Co. v. Garcia,* 817 S.W.2d 98, 101 (Tex.App.—El Paso 1991, writ denied); *Prata,* 783 S.W.2d at 701. The proof need only establish that the damages were factually caused by the defendant's misrepresentation. *Crawford,* 817 S.W.2d at 101. Unlike the fact situations in *Crawford* and *Prata,* where there was no evidence that the conduct or representation of the defendants were the producing causes of damages sustained by the plaintiffs in those cases, the following testimony of Blaugrund that Hart told her he had obtained the additional coverage was evidence of the producing cause of Berko's loss in the amount of $358,000:

(Plaintiff's Attorney): Now, after that conversation, Mrs. Blaugrund, did you make any effort to try to obtain insurance elsewhere?

(Blaugrund): No.

(Plaintiff's Attorney): Did you try to maybe consult with your husband to find out if you should get insurance elsewhere?

(Blaugrund): No.

(Plaintiff's Attorney): Did you try to undertake any kind of efforts for better protection of the store?

(Blaugrund): No, not really.

(Plaintiff's Attorney): Why not?

(Blaugrund): I understood, he told me I've got three and three. And I figured I had 600,000, and that was enough. That's all I could get.

On further cross-examination, Blaugrund repeated her testimony that she was relying on Hart to obtain the additional coverage:

(Plaintiff's Attorney): Now if he would have told you, Sara, I'm trying to get the insurance but I haven't gotten it yet, would you have let him go ahead and try to place the insurance?

(Blaugrund): Yes, I would have let him go on.

(Plaintiff's Attorney): Would you have liked to have known why he wasn't able to get it as of that date?

(Blaugrund): No.

(Plaintiff's Attorney): Okay.

(Blaugrund): I probably wouldn't have said anything.

(Plaintiff's Attorney): You'd have let him just go on?

(Blaugrund): Whatever he needed to do, that's right.

. . . . .

(Defendants' Attorney): And you've already told us that if he had told you on that date, "Look, I'm trying to get the insurance," you would have just let him continue to try to get it, correct?

(Blaugrund): Yes, sir.

(Defendants' Attorney): Wouldn't you agree that if he had said, "I'm trying to get the insurance," you wouldn't have taken any precautions against fire at that time, would you?

(Blaugrund): I wouldn't have.

Blaugrund's testimony amounts to some evidence, more than a scintilla, of producing cause. Furthermore, because the only evidence to the contrary is Hart's denial that he made any such representation, such evidence is also factually sufficient to support the jury's finding. Points of Error Nos. One and Two are overruled.

## TREBLE DAMAGES

In their third, fourth, and fifth points, Appellants contend that the trial court erred in imposing treble damages under the automatic trebling provision of Tex.Ins.Code Ann. art. 21.21, § 16(b) for the reason that such damages were not supported by the pleadings, evidence, or the jury findings as a matter of law. Specifically, they argue that since the pleadings failed to assert a cause of action which would support treble damages, and there was no "unequivocal" finding by the jury that Hart was liable under Article 21.21, treble damages were improper.

The liability question on Hart's conduct was submitted to the jury in broad form, the court listing four possible grounds of liability in the disjunctive, which the jury could only answer with "yes" or "no" and did in fact answer "yes" with no indication of which ground or grounds it was finding.[2] The first two grounds were based on deceptive acts or practices set forth in Article 21.21, Section 4(1) and (2), the third related to number 12 of the "laundry list" in Section 17.46(b) of the DTPA, and the fourth, asking whether Hart engaged "in any false, misleading or deceptive act or practice," defining the phrase as "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or cred-

ulous." After answering "yes" to the question on Hart's deceptive conduct, the jury then found that his conduct was a producing cause of Berko's damages and that his conduct with regard to the deceptive acts was undertaken by him "knowingly."

■ Under Section 16 of Article 21.21 of the Insurance Code, a plaintiff may recover treble damages for violations of those "practices defined" by Section 17.46 of the DTPA. Tex.Bus. & Com.Code Ann. § 17.46 (Vernon 1987 & Supp.1994). The Supreme Court in *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex.1994), in deciding that a third party does not have a private cause of action for unfair claim settlement practices against another party's insurer under Article 21.21, Section 16(a), confirmed once again that the phrase in that section, "any practice defined by Section 17.46" of DTPA, meant only those practices expressly made actionable in Section 17.46.[3] See *Mobile County Mut. Ins. Co. v. Jewell*, 555 S.W.2d 903, 910–11 (Tex. Civ.App.—El Paso 1977), writ ref'd n.r.e., 566 S.W.2d 295 (Tex.1978). *Allstate* while recognizing *Vail v. Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 135 (Tex.1988) as continuing to be the law as to actionable deceptive or unfair practices between the insurer and the insured, actually modifies *Vail* by making Article 21.21, Section 16 applicable

---

**2.** The liability question in the jury charge is as follows:

### Question No. 1

Did Phil Hart engage in any of the following conduct on February 21, 1990 with respect to Berko, Inc.?

 a. Making or causing to be made any statement misrepresenting the terms, benefits, or advantages of an insurance policy; or

 b. Making, or directly or indirectly causing to be made, any assertion, representation, or statement with respect to insurance that was untrue, deceptive or misleading; or

 c. Representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve; or

 d. Engaging in any false, misleading or deceptive act or practice.

 · · · · ·

You are instructed that in answering Question No. 1, "misrepresentation" means any of the following:

(a) untrue statement of a material fact; or

(b) The making of any statements in such a manner or order as to mislead a reasonably

prudent person to a false conclusion of the material facts.

"False, misleading or deceptive act or practice" means an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking or credulous.

**3.** "Art. 21.21, section 16 provides a private cause of action for any practice *defined by* section 17.46 of the DTPA as an unlawful deceptive trade practice. Tex.Ins.Code Ann. art. 21.21, § 16. 'Unfair claim settlement practices' is not among the enumerated items defined by section 17.46 as an unlawful deceptive trade practice. While section 17.46 may not be a complete list of unlawful deceptive trade practices for purposes of asserting claims under the DTPA, art. 21.21 expressly makes actionable those acts or practices that, in fact, are defined in section 17.46 as unlawful deceptive trade practices. Unfair claim settlement practices are not listed and, therefore, they are not actionable under art. 21.21, section 16 of the Insurance Code." *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145 (Tex.1994).

only to the specifically defined practices of Section 17.46(b) rather than "any unlisted practice that is determined to be false, misleading, or deceptive." *Vail*, 754 S.W.2d at 135. We conclude, therefore, that Article 21.21, Section 16 does not allow recovery based on nothing more than a simple finding of "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce" under Section 17.46(a) of DTPA.

▪ The complaint of Appellants in this appeal includes the assertion that Berko was foreclosed from utilizing the treble damage provision of Article 21.21, Section 16(b) since it did not allege that Hart violated Article 21.21 by violating any of the provisions of Section 17.46(b), and that therefore the judgment was not supported by the pleadings. The record indicates that Berko, in fact, had made such claim in its pleadings, having maintained that "Defendants' actions ... constitute a violation of Section 17.46(b)(5), (7) and (12) and constitute a violation of Art. 21.21 ...," although it does not mention the statutory penalty section, section 16(b), until two paragraphs later. Appellants argue that the imposition of treble damages was also erroneous because of the multifarious nature of the "conduct" jury question which allowed the jury to answer "Yes" without finding that Hart had engaged in specific conduct which would give rise under Article 21.21, Section 16(b) to treble damages. See *Wm. H. McGee & Co., Inc. v. Schick*, 792 S.W.2d 513, 517 (Tex.App.—Eastland 1990), writ dism'd, 843 S.W.2d 473 (Tex.1992).[4]

▪ Appellants contend that a liberal construction of the appellate rules requires that we find that the error was preserved by the following objections to the proposed charge:

We also object to part d under question one, engaging in any false, misleading or deceptive act or practice, because (a), it is redundant with a specific laundry list element under the D.T.P.A. submitted in— the laundry list element defines the false, misleading or deceptive act or practice and

they should not be submitted separately. And (b), it allows the jury to consider false, misleading or deceptive acts or practices other than the one alleged, which is the misrepresentation that has been pled, and that all of the evidence has gone to.

· · · · ·

We object to the definition of false, misleading or deceptive act or practice because again, it would permit the finder of fact under the definition to find a false, misleading or deceptive act or practice without finding the specific misrepresentation pled and so the jury might believe that Mr. Hart did not make a misrepresentation, but nevertheless find him liable.

We also object because it is conditioned on the submission of the false, misleading or deceptive act or practice in question one, and we object to both of those.

These objections are based on a claim of redundancy and a complaint that the jury was not limited to consideration of the misrepresentation that was the basis of this lawsuit, not a complaint regarding the applicability of the trebling provisions of Article 21.21, Section 16(b). See TEX.R.CIV.P. 274; *Fort Worth & D.C. Ry. Co. Kidwell*, 112 Tex. 89, 245 S.W. 667 (1922) (Objection is sufficient if it can be reasonably construed to fairly present the point of error.). With regard to their treble damage complaint, we conclude that Appellants did not adequately apprise the trial court of the alleged error. By failing to attack at the trial court level the adequacy of the pleadings to support the judgment and by not making a sufficiently specific objection to the charge to inform the court of the nature of their complaints, Appellants have failed to preserve error. TEX. R.APP.P. 52(a). See also *Silva v. Porowski*, 695 S.W.2d 766, 768 (Tex.App.—El Paso 1985, writ ref'd n.r.e.). A trial court must be given a fair opportunity to correct any nonjurisdictional errors. *Dickey v. Jansen*, 731 S.W.2d 581, 583 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

4. In *Schick*, the Eastland Court found that since the jury affirmatively found that the defendants had engaged in "unfair and/or deceptive acts or practices," without specifically announcing which prong it was endorsing, the jury could have found that the acts or practices were merely "unfair," which would not support damages under the DTPA. *Schick*, 792 S.W.2d at 517.

Points of Error Nos. Three, Four, and Five are overruled.

## IMPOSITION OF LIABILITY IN THE ABSENCE OF SPECIFIC FINDINGS

Under their sixth point of error, Appellants contend that the trial court erred by entering judgment on the jury's general liability finding, the jury not having been required to make separate findings on specific conduct.

Berko contends that Appellants failed to preserve error in this instance by their failure to object specifically to the court's refusal "to submit separate questions for each element of the Section 17.46(a) claim." Berko further asserts that the method of submission in broad form was not only within the court's discretion but is mandated by TEX. R.CIV.P. 277 which, Berko submits, in effect superseded the submission requirements set forth in *Spradling v. Williams*, 566 S.W.2d 561 (Tex.1978). We disagree with these contentions.

As has been previously discussed, the liability question in the charge inquiring about Hart's conduct did not require, or even permit, the jury to make a separate finding as to each of four acts or practices listed[5]. As a result, it is impossible to tell whether the jury found that Hart had engaged in just one of the acts or all four. This presents a problem because, of the four possible acts listed, only the first three are by law unlawful deceptive trade practices under DTPA Section 17.46(b) or Insurance Code Article 21.21, Section 4.[6] On the other hand, the fourth requires further findings as to what

specific act or conduct Hart engaged in and whether that act or conduct was a false, misleading, or deceptive act or practice. *Spradling*, 566 S.W.2d at 563–64.

Although we have previously held that Appellants' objections to the charge were not specific enough to preserve error with respect to the automatic trebling of damages question, we do not reach the same conclusion as to the adequacy of some of the same objections on the liability question. While unartfully expressed, Appellants' objections to the submission of subsection "d"[7] were sufficiently specific to inform the court of the matter complained of and at least one ground for the objection. As submitted, subsection "d" of the charge allowed the jury to find a false, misleading or deceptive act or practice based on any unnamed misrepresentation made by Hart. *Spencer v. Eagle Star Ins. Co. of America*, 876 S.W.2d 154 (Tex. 1994); *Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 924 (Tex.1983). The trial court erred by submitting subsection "d" over Appellants' objection.

Having reached that conclusion, the next step is to conduct a harmless error analysis. In order to determine whether an error in the jury charge is harmful, an appellate court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Island Recreational Development Corporation v. Republic of Texas Savings Association*, 710 S.W.2d 551, 555 (Tex.1986); *Turk v. Robles*, 810 S.W.2d 755, 759 (Tex.App.—Houston [1st Dist.] 1991, writ denied). Error is deemed to be reversible only if, when viewed in light of the totality of the circumstances, it amounted

---

5. See footnote 2.

6. Because of the "scienter" requirement of some of the laundry list acts or practices under DTPA Section 17.46(b) and Insurance Code Article 21.21, Section 4, each such act pled and proved should be separately submitted since each is a separate ground of recovery, unlike, for example, a negligence action which may have several subset acts of negligence and should be submitted in broad form. See *Eagle Properties, Ltd. v. Scharbauer*, 807 S.W.2d 714, 724 (Tex.1990). See also Walter P. Wolfram and Carol L. Wolfram, STRATEGIC GRASP OF THE DTPA (State Bar of Texas, 16th Annual Advanced Civil Trial Course, 1993).

7. "We also object to part d under question one, engaging in any false, misleading or deceptive act or practice, because ... (b), it allows the jury to consider false, misleading or deceptive acts or practices other than the one alleged, which is the misrepresentation that has been pled, and that all of the evidence has gone to.... We object to the definition of false, misleading or deceptive act or practice because again, it would permit the finder of fact under the definition to find a false, misleading or deceptive act or practice without finding the specific misrepresentation pled...."

to such a denial of the rights of the complaining party that it was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Turk,* 810 S.W.2d at 759; Tex.R.App.P. 81(b)(1).

 Under Rule 81(b)(1), Appellants must persuasively demonstrate to this Court that they have suffered harm from submission of the defective portion of the liability question. *Turk,* 810 S.W.2d at 759; *Nacol v. McNutt,* 797 S.W.2d 153, 156 (Tex.App.—Houston [14th Dist.] 1990, writ denied). We believe that Appellants have not met that burden. Appellants do not dispute that the other three theories of liability contained in subsections (a), (b), and (c) were properly submitted to the jury and are supported by the pleadings and the evidence. The fact that this Court is unable to determine whether the jury answered "yes" to subsection (d) as opposed to any of the other three subsections is not dispositive of the harm issue because it does not affirmatively demonstrate that the error *probably* [8] caused the rendition of an improper judgment. While it is *possible* that the jury made an affirmative finding based upon the improperly submitted theory of liability, a *possibility* is not a sufficient showing under Rule 81(b)(1). When faced with a similar question, the Waco Court of Appeals reached the same conclusion, finding the charge error harmless where it was unable to determine from the broad-form submission of the negligence question whether the jury inferred negligence based upon an erroneous *res ipsa loquitur* instruction or whether the jury found that the defendant committed one or more specific acts of negligence. *Dresser Industries, Inc. v. Page Petroleum, Inc.,* 821 S.W.2d 359, 366 (Tex.App.—Waco 1991), aff'd in part, rev'd in part, 853 S.W.2d 505 (Tex.1993). There are several cases that hold to the contrary, but in doing so, fail to conduct a harmless error analysis: *Lucas v. Nesbitt,* 653 S.W.2d 883, 887 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.); *Johnson v. Willis,* 596 S.W.2d 256, 262 (Tex.Civ.App.—Waco 1980), writ ref'd n.r.e., 603 S.W.2d 828 (Tex.1980); *Par-*

*ker v. Keyser,* 540 S.W.2d 827, 830–31 (Tex. Civ.App.—Corpus Christi 1976, no writ).

In order to conclude that the error complained of resulted in the degree of harm required by Rule 81(b)(1), we must determine whether or not there is evidence supporting an affirmative answer to any of the other three legal theories propounded in Question 1. See *Ford Motor Company v. Pool,* 688 S.W.2d 879, 882 (Tex.App.—Texarkana 1985), aff'd in part, rev'd in part, 715 S.W.2d 629 (Tex.1986) (error in special issue as to one theory of liability harmless where there was evidence to support other properly submitted legal theory set forth in same question); see also *Bernstein v. Portland Savings and Loan Association,* 850 S.W.2d 694, 702 (Tex.App.—Corpus Christi 1993, writ denied) (jury instructed on three different fraudulent acts, but instruction as to one type of fraud was erroneous; because jury found fraud on broad-form jury question, court could not determine which of three acts of fraud was found by jury; to determine if error harmful, court examined whether jury's finding of fraud was supported under other two types of fraud). If the evidence does not support an affirmative finding on any of the other theories submitted, then it would be proper to conclude that harm is shown. See *Ford Motor Co. v. Pool,* 688 S.W.2d at 882. On the other hand, if the evidence supports the jury's finding on any of the other theories, then Appellants have failed to demonstrate that it is more likely than not that an improper judgment resulted from the error.

In light of the fact that Appellants have not attacked the factual or legal sufficiency of the evidence with regard to an affirmative finding on the other three subsections, and because there is evidence to support a "yes" answer to subsections (a), (b), and (c), we are unable to conclude that the erroneous portion of Question 1 probably caused the rendition of an improper judgment. For these reasons, we overrule Point of Error No. Six.

---

8. "Probably" is defined as meaning "in a probable manner." *Aultman v. Dallas Railway & Terminal Co.,* 152 Tex. 509, 260 S.W.2d 596, 600 (1953). The word "probable" conveys a mean-

ing of "more likely than not." *Fibreboard Corporation v. Pool,* 813 S.W.2d 658, 681 (Tex.App.—Texarkana 1991, writ denied).

## IMPOSITION OF LIABILITY ON MISLEADING CONDUCT

▮ Appellants under their seventh point assert error by the court in entering judgment on the liability finding because the liability question as submitted permitted the jury to find, and it may have found, that some conduct of Hart was merely misleading. We find no objection by Appellants which relates to this point of error. Failure to make a timely objection to the submission of a special issue, definition or instruction precludes appellate review of the charge based on any asserted error relative to such submission. *Capital Title Co., Inc. v. Donaldson,* 739 S.W.2d 384, 387 (Tex.App.—Houston [1st Dist.] 1987, no writ); Tex.R.App.P. 52(a). The seventh point is overruled.

## FAILURE TO TREBLE PREJUDGMENT INTEREST

▮ Berko presents one cross point, contending that the trial court erred in failing to treble the prejudgment interest award. Although Berko attached to its motion for entry of judgment a proposed judgment which included a provision trebling the sum of the actual damages and the prejudgment interest, this was insufficient to preserve error. Before an appellee may complain on appeal of a part of a judgment by cross-point, it must have excepted to the judgment, filed a motion for new trial on the point, or in some other appropriate manner indicated to the trial court any dissatisfaction it has with the judgment as entered. *Group Medical and Surgical Service, Inc. v. Leong,* 750 S.W.2d 791, 798 (Tex.App.—El Paso 1988, writ denied); *Delhi Gas Pipeline Corp. v. Lamb,* 724 S.W.2d 97, 100 (Tex.App.—El Paso 1986, writ ref'd n.r.e.). However, even if error had been properly preserved, we would be constrained to follow our holding in *Leong* and refuse to allow the trebling of prejudgment interest. Prejudgment interest on punitive damages was specifically disallowed in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 555 (Tex.1985). In the recent case of *C & H Nationwide, Inc. v. Thompson,* 37 Tex.Sup.Ct.J. 149, 161, 1994 WL 278167 (June 22, 1994), the Supreme Court held that Tex.Rev.Civ.Stat.Ann. art.

5069–1.05 (Vernon Supp.1993) modified *Cavnar* so as to allow prejudgment interest on future damages. While recognizing that Tex. Civ.Prac. & Rem.Code Ann. § 41.006 prohibited prejudgment interest on punitive damages in cases involving personal injury, property damage, and wrongful death actions grounded in negligence or strict tort liability, the majority of the court on this issue only speculated in footnote dictum that "[p]erhaps prejudgment interest would be available on punitive awards not covered by … § 41.006, including treble damage awards under the Texas Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Com.Code § 17.41, et seq." 37 Tex.Sup.Ct.J. at 161. Berko's cross-point is overruled.

Having overruled all of Appellants' points of error and Berko's cross-point, judgment is affirmed.

KOEHLER, Justice, dissenting.

Having authored the opinion of the Court based on what we believe to be the controlling statutory and case law, it may be considered rather unusual that I add a dissent. I do so, however, to express a strong conviction that the application of the automatic trebling of damages provision of Tex.Ins. Code Ann. Article 21.21, Section 16(b) under the facts of this case produced an outrageous result.

In this case, we have at most a simple misrepresentation, as found by the jury, which in no way resulted in any benefit to either of the Appellants and on which Blaugrund (and therefore Berko), by her own admission, did not detrimentally rely in the sense that she would have done anything different had Hart told her exactly what he claimed he told her. Although I have no quarrel with the jury finding, this case was basically a swearing match which could have easily gone either way. In order to activate the automatic trebling of damages provision, the jury had only to find that Hart "knowingly" committed the act or acts complained of, a finding which would be pretty much "automatic" unless a jury could reasonably conclude that Hart did not know what he was saying. Although Berko's attorney twice in

final argument assured the jury that the questions they were being asked to answer were not about punitive damages, that was exactly what the "knowingly" question was about.

Very recently, the United States Supreme Court, in *Honda Motor Co., Ltd. v. Oberg*, —— U.S. ——, ——, 114 S.Ct. 2331, 2339, 129 L.Ed.2d 336 (1994), reversed an Oregon jury punitive damage award and remanded the case to the courts of that state for further consideration, the court stating that "Oregon's abrogation of a well-established common law protection against deprivations of property raises a presumption that its procedures violate the Due Process Clause[,]" and adding that "[p]unitive damages pose an acute danger of arbitrary deprivation of property." Oregon law apparently does not allow judicial review of the size of jury punitive damage awards if there is any evidence to support the award. If punitive damage awards by a jury can sometimes be pernicious and thus require some judicial oversight procedures, then what can be said about mandatory statutory trebling provisions, not subject to judicial scrutiny, especially when applied to cases similar to the one we have just affirmed? Under *Honda Motor*, the automatic trebling provision may well amount to an unconstitutional deprivation of personal property without due process of law. In this writer's opinion, the automatic trebling of damages provision of Article 21.21, Section 16(b) needs to be modified to provide for assessment of punitive damages by the fact finder, subject to normal judicial review.